IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAI DWAYNE INGRAM,                              :
                                                :
        Plaintiff                               :
                                                :
    v.                                          :   No. 3:07-CV-02259
                                                :   (JUDGE VANASKIE)
DAVID LUPAS, Luzerne County Chief               :
District Attorney, DANIEL BEKY,                 :
Luzerne County Detective, and                   :
STEPHEN KOFCHAK, Larksville                     :
Assistant Chief of Police,                      :
                                                :
        Defendants                              :

MEMORANDUM

Plaintiff Kai Dwayne Ingram, proceeding pro se, initiated this action pursuant to 42 U.S.C. § 1983 against Defendants David Lupas, the Luzerne County Chief District Attorney, Daniel Beky, a Luzerne County Detective, and Stephen Kofchak, the Larksville Borough Assistant Chief of Police.  (Compl., Dkt. Entry 1.)  In essence, Mr. Ingram claims his Fourth, Fifth and Fourteenth Amendment rights were violated in connection with his arrest and detention on May 14, 2006, for the following reasons:  Defendants illegally entered his home, his arrest was made without probable cause, the Affidavit of Probable Cause was not confirmed by the proper issuing authority, and he was not taken before a Magistrate Judge (Issuing Authority) before being detained.  (Id.)  Mr. Ingram also asserts federal law (and possibly state law) claims of false arrest, illegal detention and malicious prosecution.  (Id. at 2.)

Presently before the Court are Motions to Dismiss by all Defendants, which will be treated as Motions for Summary Judgment. (Dkt. Entries 12 & 16.) Because Plaintiff has failed to make a sufficient showing of a violation of his constitutional rights, his civil rights claims will be dismissed. To the extent Plaintiff asserts any state law claims, the Court declines to exercise jurisdiction.

I. BACKGROUND

On May 14, 2006, gun shots were reported emerging from a tan colored van being driven by a black male named Kai. (Aff. Probable Cause, Dkt. Entry 1, at 3-6.) Several witnesses stated that Kai shot two adults, each twice, identified as Gregory Spears and Joshua Lopez. Kai was described by witnesses as a black male, about 5'10", 180 pounds, wearing a white t-shirt and baggy pants, and driving a tan van owned by Faith Lane.[1] (Id.)

After hearing the witnesses describe Mr. Ingram and his possible whereabouts, Officer Kofchak and Detective Beky attempted to locate Mr. Ingram at his mother's home. (Aff.

---

[1]Witness Thomas Pretzman heard gun shots and "saw a tan colored van stopped in the street with a black male standing next to it firing a handgun . . . ." (Aff. Prob. Cause, Dkt. Entry 1, at 3.) The shooter was "a black male about 5'10'', 180 lbs wearing a white t-shirt and baggy pants." (Id.) Witness Nancy Rivera heard the gun shots and recognized the van as belonging to Faith Lane and the driver as Lane's boyfriend "Kie." (Id.) Witness Juan Rivera heard gun shorts and saw Kai getting into the van as a driver. (Id. at 4.) He knew it was the neighbor's van because he had worked on it. (Id.) Witness Kathy Strish stated that she stopped behind the van and observed the driver get out and fire four or five shots. (Id.) She described the driver as a black male. (Id.) Witness Letticia Lopez stated she heard gunshots and identified Kai as the shooter and the driver of the van. (Id.)

Probable Cause, Dkt. Entry 1, at 4.) The officers spoke to Mr. Ingram's mother on the front porch and she agreed to let the officers enter the house.[2] (Suppression Hearing Transcript, Dkt. Entry 13-5, at 5.)

Mr. Ingram came downstairs, wearing a white t-shirt and tan baggy pants, which matched the description given by the witnesses. (Suppression Hearing Trans., Dkt. Entry 13-5, at 5.) Officer Beky informed Mr. Ingram that his name had been mentioned in connection with a crime and asked Mr. Ingram to accompany him to the police station for questioning. (Compl., Dkt. Entry 1, at 1.) Mr. Ingram willingly agreed, and proceeded to the police station. (Aff. Probable Cause, Dkt. Entry 1, at 4.)

While at the Police station, Mr. Ingram declined to answer any questions and asked for a lawyer. (Id.) The officers contacted District Attorney Lupas, who stated that the evidence sufficed to establish probable cause for Mr. Ingram's arrest. (Id.) Mr. Ingram was subsequently arrested and charged with the shooting of Gregory Spears and Joshua Lopez.

Before Mr. Ingram's case proceeded to trial, Mr. Ingram, represented by counsel, filed an Omnibus Pretrial Motion and a Motion to Suppress, alleging that certain statements were illegally obtained in violation of the Fifth Amendment of the United States Constitution and Article I, Sections 8 and 9 of the Pennsylvania Constitution. (Pretrial Mot., Dkt. Entry 13-4, at

---

[2]Officer Kofchak testified that they asked Kai's mother if they could go inside the house and she said yes. (Suppression Trans., Dkt. Entry 13-5, at 5.) No conflicting testimony was presented.

1.) Later, Mr. Ingram filed a Supplemental Omnibus Pretrial Motion, arguing the pat down and seizure of keys found in Mr. Ingram's pocket were performed illegally. (Supp. Pretrial Mot., Dkt. Entry 13-4, at 4.) He further argued that the search and seizure of his clothing violated his constitutional rights. (Id. at 4-5.)

A suppression hearing was held on April 30, 2007. Before the hearing, Defendant's counsel withdrew the request to suppress statements because counsel believed "there were no statements made by the defendant." (Suppression Hearing Trans., Dkt. Entry 13-5, at 3.) Mr. Ingram and Mr. Kofchak testified at the hearing as to the events that transpired on the night of the shooting. Judge Peter Paul Olszewski, Jr., made several findings of fact. He found that the police officers learned from witnesses that an individual had loaned her tan Ford Aerostar van to Kai, who left the scene in the van. The police also learned an address in Wilkes-Barre where Kai lived. (Id.) Judge Olszewski further found that the police officials "went to Kai's address where they encountered Kai's mother. She met–she allowed them into the home and indicated that Kai was upstairs." (Id.) Judge Olszewski then made the following conclusions of law:

> The pat down of the defendant by the Chief is not contested by the defendant, and even if it was, the pat down search was fully permitted pursuant to Terry versus Ohio and its progeny in Pennsylvania case law which follows those legal precepts. . . .The seizure of the keys during the search of the defendant incident to arrest is proper and legal. The police seizure of the defendant's clothing was seized incident to his arrest and was proper and legal.
>     All credibility in this case is found to be in favor of Chief Kofchak and Detective Beky and against the defendant.

(Suppression Hearing Trans., Dkt. Entry 13-5, at 11.)

Mr. Ingram's case then proceeded to trail.  At trial, a jury convicted Mr. Ingram of two counts of aggravated assault and one count of carrying a firearm without a license. (Superior Ct. Decision, Dkt. Entry 13-9, at 1.)  He then appealed his conviction, which was affirmed in a non-precedential opinion issued on February 20, 2008.  (Dkt. Entry 13-8, at 5-6; Superior Ct. Decision, Dkt. Entry 13-9, at 1; Commonwealth v. Ingram, 951 A.2d 1211 (Pa. Super. 2008).[3]

The Complaint alleges that, on May 14, 2006, Detective Beky illegally entered Mr. Ingram's home without a warrant and that no probable cause existed for his arrest.  (Compl., Dkt. Entry 1, at 1.)  Mr. Ingram further alleges he was illegally committed to the Luzerne County Correction Facility under false authority and did not see a Magistrate Judge (Issuing Authority) for approximately ten hours.  (Id. at 2.)  Defendants' actions allegedly violated Mr. Ingram's rights under the Fourth, Firth and Fourteenth Amendments, and amounted to false arrest, illegal detention and malicious prosecution.  (Compl. at 2.)  Mr. Ingram seeks damages from Attorney Lupas, in his individual capacity, for $2,000,000, and seeks damages from Officers Beky and Kofchak in the amount of $1,000,000 each.  (Id. at 8.)

II. DISCUSSION

A. The Applicable Legal Standard

Defendants have labeled their motions as Motions to Dismiss pursuant to Federal Rule

---

[3]Notably, Ingram's appeal challenged only the sentence that was imposed, not his conviction. (Superior Ct. Decision, Dkt. Entry 13-9.)

of Civil Procedure 12(b)(6).  (See Dkt. Entries 12 & 16.)  Under Rule 12(b)(6), "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of America, 361 F.3d 217, 222 (3d. Cir. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997)) ("Burlington").  A document forms the basis for a claim when it is "*integral to or explicitly relied* upon in the complaint."  Burlington, 114 F.3d at 1426 (emphasis in original).  The rationale for permitting consideration of such documents is "to prevent [ ] the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent."  Id.  Under Rule 12(d), however, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[4]  FED. R. CIV. P. 12(d).

Here, Plaintiff has included with his Complaint an Affidavit of Probable Cause and a Police Criminal Complaint by Officer Kofchak.  (See Compl., Dkt. Entry 1.)  Defendant Kofchak,

---

[4]Rule 12(d) further requires the Court to give the parties "a reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P. 12(d).  Here, all parties have filed exhibits in addition to the pleadings, and have had the opportunity to argue the relevance of those exhibits in their briefs.  Indeed, it is clear that the parties have submitted all the evidence relevant to the questions presented in Plaintiff's claims.  No additional evidence from either side is necessary to resolve the motion.

with his Motion to Dismiss, has attached the Omnibus Pretrial Motion, the Supplemental Omnibus Pretrial Motion, and the Motion to Suppress filed by Mr. Ingram in his state court criminal trial.  (Pretrial Mot., Dkt. Entry 13-4.)  Also included is a transcript of the suppression hearing conducted before Mr. Ingram's state court criminal trial, along with trial notes, the trial verdict, Mr. Ingram's Notice of Appeal, the Docket sheet, and the Judgment Order.  (See Dkt. Entries 13 -5 to -10.)  Defendants Lupas and Beky have attached, among other things, the docket transcript and bail form.  (See Dkt. Entry 18 -2 to -7.)

The evidence submitted, although plainly related to the averments of the Complaint, requires the Court to consider the Defendants' motions as motions for summary judgment.[5] Therefore, the Court will convert the Motions to Dismiss to Motions to Summary Judgment.

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

---

[5] The principal concern in converting a motion to dismiss into a summary judgment motion is to afford the plaintiff an opportunity to respond to the extraneous evidence submitted by the defense. Pension Benefit Guar. Corp. v. White Consol. Indust., Inc., 998 F.2d 1192, 1196 -97 (3d Cir. 1993).  "[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason – requiring notice so that the party against whom the motion to dismiss is made may respond – that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions." Cortec Indust., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). In this case, Plaintiff has responded to the submissions made by Defendants, obviating concern that Plaintiff would not be aware that matters extraneous to the pleadings will be considered by this Court.

56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. Merely conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment. Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

B. Fourth Amendment Claims

Plaintiff claims that his Fourth Amendment rights were violated in four different instances: Defendants illegally entered his home, his arrest was made without probable cause,

the Affidavit of Probable Cause was not authorized by a proper issuing authority, and he was not taken before an Issuing Authority before being detained. (Compl., Dkt. Entry 1.) Each instance will be addressed separately.

### 1. Consent to Enter a Private Home

"It is well established that, absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists." United States v. Cruz Jimenez, 894 F.2d 1, 5 (1st Cir. 1990) (citing Donovan v. Dewey, 452 U.S. 594 (1981)); Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). "The Fourth Amendment permits law enforcement officers to search a home without a warrant when an individual with 'authority' over the premises voluntarily consents to the search." United States v. Anderson, 284 F. App'x 977, 979 (3d Cir. 2008) (citing Georgia v. Randolph, 547 U.S. 103, 109 (2006)). "A third-party has common authority over property when he or she has mutual use of or a substantial interest in it." Id. (citing United States v. Matlock, 415 U.S. 164, 171 n.4 (1974)).

In this case, Officers Kofchak and Beky did not have a warrant. They, however, testified in state court proceedings that Defendant's mother consented to their entry, and the state court found this testimony credible. At the suppression hearing, Judge Olszewski, made the following finding of fact: "Police officials then joined Wilkes-Barre police officers and went to Kai's address where they encountered Kai's mother. She met – she allowed them into the

home . . . ." Officer Kofchak testified that when he asked if he could enter the home, Kai's mother said yes. (Suppression Hearing Trans., Dkt. Entry 13-5, at 5.)

Although Plaintiff argues that his mother did not give consent in his Brief in Opposition, the determination by the state court precludes re-litigation of the consent issue.[6] The doctrine of collateral estoppel bars a plaintiff from re-litigating matters already decided in a prior state court proceeding in a civil rights action. See Allen v. McCurry, 449 U.S. 90, 103-04 (1980). A claim will be barred by collateral estoppel if the following elements are satisfied:

> (a) the issue decided in the prior adjudication is identical with the one presented in the later action;
> (b) there is a final judgment on the merits;
> (c) the party against whom the doctrine is asserted was a party or in privity with a party to the other action;
> (d) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action; and
> (e) the issue decided was essential to the judgment.

Drum v. Nasuti, 648 F. Supp. 888, 897 - 898 (E.D. Pa. 1986) (citing Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970)).[7]

In this matter, all the elements of the collateral estoppel doctrine are satisfied. The state court judge found that Mr. Ingram's mother allowed the police officers into the house during the

---

[6]It is worth noting that Judge Olszewski found "all credibility . . . in favor of Chief Kofchak and Detective Beky and against" Mr. Ingram. (Suppression Hearing Trans., Dkt. Entry 13-5, at 11.)

[7]"[C]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Allen, 449 U.S. at 94.

suppression hearing in the underlying criminal matter, in which Plaintiff was the Defendant.  Mr. Ingram had a full opportunity to confront the issue at that time and when he appealed his conviction.  Moreover, a suppression ruling followed by a conviction amounts to a final judgment on the merits.  See Berry v. Chaves, No. Civ. A. 02-893,  2003 WL 21497557, at *2 (E.D. Pa. June 30, 2003) (finding the plaintiff's civil rights claim challenging his arrest barred by collateral estoppel because "the issues raised in the [ ] § 1983 action are identical to the issues actually litigated in the criminal case . . . ," the plaintiff was the defendant in the criminal case, and "denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes."[8] (citing Nelson v. Howard, 810 F. Supp. 161, 163 (E.D. Pa. 1992), Lomax v. Smith, 501 F. Supp. 119, 122 (E.D. Pa. 1980) and Shaffer v. Smith, 673 A.2d 872, 874 (1996))).

       2.  Probable Cause

A warrantless arrest must be supported by probable cause to be constitutionally sound. Commonwealth v. Merriwether, 555 A.2d 906, 910 (Pa. Super. Ct. 1989) (citing Valenti v. Sheeler, 765 F. Supp. 227, 230 (E.D. Pa. 1991)).  Indeed, an arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citing Fagan v. Pittsburgh Terminal Coal

---

[8]It also bears observation that there is no dispute that Ingram agreed to leave the home with the police officers.  He was not arrested in the house.

Corp., 149 A. 159 (Pa. 1930)); Valenti, 765 F. Supp. at 230 ("The ultimate finding of guilt or innocence, or dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid.  Otherwise, every time charges filed against an arrestee were dismissed or dropped, the police officers involved would be liable for false arrest or violations of the arrestee's civil rights." (citing Pierson v. Ray, 386 U.S. 547, 555 (1967))) (internal citation omitted).

Probable cause exists when "'the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'"  Renk, 641 A.2d at 293 (citing Commonwealth v. Rodriguez, 585 A.2d 988, 990 (Pa. 1991)).  The determination of probable cause is a factual analysis, based on the "totality of the circumstances."  Illinois v. Gates, 462 U.S. 213, 230-241 (1983).

Here, it is evident that Officers Kofchak and Beky had probable cause to arrest Mr. Ingram.  When the officers arrived on the scene of the shooting, they spoke to several witnesses, who each gave the same physical description of Plaintiff, some even using his name.  The witnesses also said Mr. Ingram was driving a tan van.  The corroborating nature of these statements would have suggested to the police officers that they were trustworthy and accurate.  The officers also spoke to Faith Lane, the owner of the tan van, who told them that

12

her friend Kai took the vehicle to go see his mother, which further confirmed the connection between Kai and the van.

One of the witnesses, Letticia Lopez, directed the officers to Mr. Ingram's mother's house and described the neighborhood. The description and location of the home and neighborhood matched, as well as the physical description of Mr. Ingram, who was wearing tan baggy pants and a long white shirt. Under these circumstances, a reasonable person would believe that Mr. Ingram had committed the crime. Thus, based on the numerous eye witness reports and descriptions, the police officers had probable cause.

### 3. The Preliminary Hearing

Under the Fourth Amendment, persons arrested without a warrant "must promptly be brought before a neutral magistrate for a judicial determination of probable cause," but the hearing does not have to take place "immediately upon taking a suspect into custody and completing booking procedures." County of Riverside v. McLaughlin, 500 U.S. 44, 53 (1991). The United States Supreme Court has left "it to the individual States to integrate prompt probable cause determinations into their differing systems of pretrial procedures." Id.

Pennsylvania Rule of Criminal Procedure 540(d) requires an issuing authority to make a determination of probable cause if a defendant is arrested without a warrant. See Pa. R. Crim. P. 540(d). "[T]he defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay." Pa. R. Crim. P. Rule 519 (A)(1). An "Issuing Authority"

"is any public official having the power and authority of a magistrate, a Philadelphia bail commissioner, or a magisterial district judge." Pa. R. Crim P. 103.

Contrary to Mr. Ingram's assertions, the United States Constitution does not require that persons arrested without a warrant be taken before an Issuing Authority before being detained. See McLaughlin, 500 U.S. at 53. It is undisputed that Mr. Ingram was brought before an Issuing Authority shortly after his arrest. Mr. Ingram complains that his appearance before a District Justice ten (10) hours after his arrest was untimely.

After an arrest without a warrant is effectuated, a suspect may be detained before being brought before an issuing authority/magistrate judge "for a brief period of detention to take the administrative steps incident to arrest." Gerstein v. Pugh, 420 U.S. 103, 114 (1975). "What constitutes an unnecessarily long detention under Gerstein 'must be determined on a case-by-case basis.'" Owens, on Behalf of Young v. County of Delaware, Civ. A. No. 95-4282, 1996 WL 476616, at *19 (E.D. Pa. Aug. 15, 1996). In County of Riverside v. McLaughlin, 500 U.S. 44, 57 (1991), the Court ruled that the Fourth Amendment generally requires a judicial finding of probable cause within 48 hours of a warrantless arrest. Plaintiff was brought before a judicial officer well within the 48 hour period. Moreover, Plaintiff has not set forth allegations, or evidence, as to any improper conduct on the part of the police officers in connection with the delay. He does not suggest that the officers delayed his appearance in order to gather more evidence or why a ten hour delay was unnecessarily long. Nor has he articulated any particular

prejudice as a result of the 10 hour delay. Thus, Plaintiff has failed to show a constitutional violation in connection with his preliminary hearing.

          4. False Arrest, False Imprisonment, and Malicious Prosecution Claims

To the extent that Plaintiff is alleging claims of false arrest and false imprisonment, his claims have no merit.[9] To succeed on a claim for false imprisonment or false arrest under the Fourth Amendment, a plaintiff is required "to show that he or she was arrested without probable cause." Mills v. City of Harrisburg, Civil Action No. 1:06-CV-0882, 2008 WL 5111914, at *4 (M.D. Pa. Dec. 2, 2008) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995)); Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.") Because probable cause existed at the time of Mr. Ingram's arrest, any claim for false arrest or false imprisonment cannot proceed.

---

[9]Similar claims by arrestees have been construed as claims for false arrest and false imprisonment. See Gibson v. Superintendent of N.J. Dept. of Law and Pub. Safety, 411 F.3d 427, 437 (3d Cir. 2005) (construing Plaintiff's claims that officers violated his rights by detaining and arresting him without probable cause and falsely imprisoning him as claims for false arrest or imprisonment) (citing Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998)). Because false arrest is a type of false imprisonment, the claims may be treated together. See Wallace v. Kato, 549 U.S. 384 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter.")

Mr. Ingram's malicious prosecution claim is also deficient. "'One element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the accused.'" Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Here, because Mr. Ingram was convicted, his malicious prosecution claim is without merit.

C. Fifth Amendment Claims

To the extent that Mr. Ingram alleges violations of the Fifth Amendment, his claim must fail. "[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself." Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994). "The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself . . . ." Id. Mr. Ingram does not allege that he was compelled to be a witness against himself, or that he made any statements. Thus, a Fifth Amendment claim does not lie.

D. State Law Claims

"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . . Certainly, if the federal claims are dismissed

16

before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id.  Because there is no affirmative justification for exercising jurisdiction over any pendent state law claims asserted, they will be dismissed.

III. CONCLUSION

     For the reasons stated in the foregoing memorandum, Defendants' Motions to Dismiss, converted into Motions for Summary Judgment, will be granted.  An appropriate order follows.

                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie
                              United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAI DWAYNE INGRAM, : | |
| : | |
| Plaintiff : | |
| : | |
| v. : | No. 3:07-CV-02259 |
| : | (JUDGE VANASKIE) |
| DAVID LUPAS, Luzerne County Chief : | |
| District Attorney, DANIEL BEKY, : | |
| Luzerne County Detective, and : | |
| STEPHEN KOFCHAK, Larksville : | |
| Assistant Chief of Police, : | |
| : | |
| Defendants : | |

## ORDER

NOW, THIS 3rd DAY OF FEBRUARY, 2009, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' converted Motions for Summary Judgment (Dkt. Entries 12 & 16) are GRANTED.

2. Judgement shall be entered in favor of Defendants and against Plaintiff.

3. The Clerk of Court is directed to mark this matter CLOSED.

                                           s/ Thomas I. Vanaskie
                                           Thomas I. Vanaskie
                                           United States District Judge